engaging in the business of a grocer for a period of three years, and then only on condition of having served an apprenticeship, or working with some duly licensed grocer, but in the matter of conducting the business of an undertaker, even though the man conducting the business employs competent help, it is assumed that the Legislature is without limitation, for no fact·is presented which would be even approximately as good a justification as might be urged in the case of a grocery store.

In Schnaier v. Navarre Hotel & Importation Co., 182 N. Y. 83, 88, 74 N. E. 561, 562, 70 L. R. A. 722, 108 Am. St. Rep. 790, the court summarizes the gist of a large number of decisions bearing upon the police power, the most salient being that the "common business and callings of life, the ordinary trades and pursuits which are innocent in themselves, and have been followed in all communities from time immemorial, must therefore be free in this country to all alike upon the same terms"; and in citing Lochner v. State of New York, supra, the court say:

"The principle that the individual right to make contracts in relation to business is a part of that liberty protected by the Constitution was asserted and maintained, and a statute of this state which made it a penal offense for a master to permit his servant to work more than 10 hours in the day has been held to be in conflict with that right, and was therefore unconstitutional and void. That case amply vindicates the right of the individual to freedom in the conduct of any legitimate business and his right to make contracts concerning the same."

In this case the right of the defendant to make a contract for the burial of the dead is denied, not because there is any pretense that any consideration of the welfare of society as a whole is involved, but because the Legislature has arbitrarily interfered and demanded that he should secure a license to do that which he had a perfect natural and constitutional right to do.

The judgment of conviction should be reversed. All concur.

---

(125 App. Div. 705.)

BALLIET v. METROPOLITAN LIFE INS. CO.

(Supreme Court, Appellate Division, Second Department. April 24, 1908.)

1. INSURANCE—ACTION ON POLICY—QUESTION FOR JURY.
   In an action on a life insurance policy, whether insured voluntarily allowed the policy to lapse, or whether that result was accomplished by the wrongful act of the insurer, *held* to be a question for the jury.

2. PLEADING—ANSWER—DENIAL OF KNOWLEDGE OR INFORMATION.
   A denial of knowledge or information sufficient to form a belief as to matters which the pleader is bound to know does not raise an issue.

3. INSURANCE—ACTION ON POLICY—ELECTION.
   Where an insurance company, when sued on a policy, alleged in its answer that the policy was issued in favor of plaintiff, and defended on the sole ground that the policy had lapsed, but, after verdict was rendered, had it set aside on the ground that the action should have been brought by the executor or administrator of insured, it in effect elected to pay the amount of the policy to plaintiff in case its technical defense failed, and it should be held to that election where an action by the executor or administrator is barred.

Appeal from Trial Term, Kings County.

Action by Josephine E. Balliet against the Metropolitan Life Insurance Company. From an order setting aside a verdict for plaintiff, she appeals. Reversed, and verdict reinstated.

Argued before WOODWARD, JENKS, HOOKER, GAYNOR, and MILLER, JJ.

James P. Kohler, for appellant.

James F. McKinney, for respondent.

MILLER, J. This is an action on a policy of life insurance issued by the United States Industrial Insurance Company on the 19th day of December, 1892, on the life of the plaintiff's son. The policy was allowed to lapse, but was revived by the defendant May 22, 1899, when there were arrears of premiums amounting to $58.75; the defendant agreeing in writing to assume the policy and to waive the collection of premiums in arrears, in consideration of that amount being a lien against the policy, "to be deducted from the single premium in calculating the paid-up value of this policy, or from the proceeds of the policy when it is presented as a claim." The weekly premium was thereafter paid to the defendant until October 7, 1901, when, according to the plaintiff's evidence, the policy was delivered to the defendant, with the request that a paid-up policy be substituted for it, but upon the express stipulation that it should not be permitted to lapse; that, if a paid-up policy could not be substituted, the plaintiff should be permitted to continue the payment of premiums. The defendant kept the policy until January, 1902, when its superintendent returned it, saying that it was lapsed, and that the company would not accept the further payment of premiums.

The sole question submitted to the jury was whether the insured voluntarily allowed the policy to lapse, or whether that result was accomplished by the wrongful act of the defendant. The jury found for the plaintiff the amount of the policy, less said sum of $58.75 and the sum of $27.25, the amount of the premiums payable between the last payment and the death of the insured. We think that question was properly submitted to the jury, and are not disposed to disturb its finding. The policy provided that it should be payable "unto the executors or administrators of Owen W. E. Balliet, unless payment shall be made under the provisions of article second." Said "article second" provided:

"To Whom Insurance may be Paid.—The company may pay the sum of money assured hereby to any relative by blood or connection by marriage of the insured, or to any other person appearing to said company to be equitably entitled to the same by reason of having incurred the expense in any way on behalf of the insured for his or her burial, or for any other purpose, and the production by this company of a receipt signed by any or either of said persons, or of other sufficient proof of such payment to any or either of them, shall be conclusive evidence that such sum has been paid to the person or persons entitled thereto, and that all claims under this policy have been fully satisfied."

The complaint averred that the policy was issued for the benefit of the plaintiff. The defendant denied any knowledge or information sufficient to form a belief as to that allegation, but expressly alleged

in its separate defense that the policy was issued "in favor of the plaintiff herein." The only questions raised by the defendant throughout the trial were that the policy had been allowed to lapse and that the insured was not entitled to extended insurance, in view of the peculiar wording of the provision reviving the policy quoted supra. The court in charging the jury stated:

"The policy provided for the payment of the premium of so much a week, and it appears to be conceded, so far as this case is concerned, that it was payable at the death of the insured to the mother."

But after the charge was concluded the court evidently suggested to counsel the question whether the action should not have been brought by the executor or administrator of the insured, and then, for the first time, the defendant raised the point by a motion to dismiss. The court set aside the verdict and dismissed the complaint, on the ground that the action could only be maintained by the executor or administrator of the insured.

A denial of knowledge or information sufficient to form a belief as to matters which the party pleading is bound to know does not raise an issue. Rochkind v. Perlman (decided January 24, 1908) 108 N. Y. Supp. 224. The defendant had made this contract its own by a written indorsement thereon. It had had the original policy in its possession, both when it revived it and when it wrongfully suffered it to lapse, as the jury found. Presumably it had a record of it, and it would be difficult, to say the least, to defend its denial of knowledge or information sufficient to form a belief as to its provisions; but we prefer to put the decision in this case upon a different ground. The defendant concedes that at its election it could have paid the amount of the policy to the plaintiff, and that such payment would have been a defense to an action by an executor or administrator. We think the express averment in its answer that the policy was issued in favor of the plaintiff, and its consent to litigate the case with the plaintiff upon the sole issue of whether the policy had lapsed, was at least an election on its part to pay the amount of the policy to the plaintiff in case its technical defense failed; and it should be held to that election, in view of the fact that an action by the executor or administrator is now barred.

The order should be reversed, and the verdict reinstated.

Order reversed, with costs and disbursements, and verdict reinstated, with costs. All concur.